# UNITED STATES DISTRICT COURT
for the

U.S. DISTRICT COURT
EASTERN DISTRICT - WI
FILED

2026 JUN -1 A 11: 22

CLERK OF COURT

_____ Division

|  |  |
|---|---|
| Anthony Jones <br> *Plaintiff(s)* <br> (Write the full name of each plaintiff who is filing this complaint. If the names of all the plaintiffs cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.) <br><br> -v- <br><br><br> Schneider National Carries <br> *Defendant(s)* <br> (Write the full name of each defendant who is being sued. If the names of all the defendants cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.) | Case No. **26-C -976** <br> *(to be filled in by the Clerk's Office)* <br><br> Jury Trial: *(check one)* ☑Yes ☐No |

## COMPLAINT FOR EMPLOYMENT DISCRIMINATION

## I.    The Parties to This Complaint

### A.    The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

| | |
|---|---|
| Name | Anthony Jones |
| Street Address | 314 S. Henderson Rd Suite G #163 |
| City and County | King of Prussia |
| State and Zip Code | Pennsylvania 19406 |
| Telephone Number | 835 - 271 - 0517 |
| E-mail Address | aqjoness@gmail.com |

### B.    The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title *(if known)*. Attach additional pages if needed.

Defendant No. 1

    Name

    Job or Title *(if known)*

    Street Address

    City and County

    State and Zip Code

    Telephone Number

    E-mail Address *(if known)*

Defendant No. 2

    Name

    Job or Title *(if known)*

    Street Address

    City and County

    State and Zip Code

    Telephone Number

    E-mail Address *(if known)*

Defendant No. 3

    Name

    Job or Title *(if known)*

    Street Address

    City and County

    State and Zip Code

    Telephone Number

    E-mail Address *(if known)*

Defendant No. 4

    Name

    Job or Title *(if known)*

    Street Address

    City and County

    State and Zip Code

    Telephone Number

    E-mail Address *(if known)*

## C.    Place of Employment

The address at which I sought employment or was employed by the defendant(s) is

| | |
|---|---|
| Name | Schneider National Carriers |
| Street Address | 3101 Packerland Dr. |
| City and County | Green bay WI, Brown County |
| State and Zip Code | Wisconsin 54313 |
| Telephone Number | 920-592-2000 |

## II.    Basis for Jurisdiction

This action is brought for discrimination in employment pursuant to *(check all that apply)*:

☑ Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (race, color, gender, religion, national origin).

*(Note: In order to bring suit in federal district court under Title VII, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

☐ Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§ 621 to 634.

*(Note: In order to bring suit in federal district court under the Age Discrimination in Employment Act, you must first file a charge with the Equal Employment Opportunity Commission.)*

☐ Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112 to 12117.

*(Note: In order to bring suit in federal district court under the Americans with Disabilities Act, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

☑ Other federal law *(specify the federal law)*:

OSHA Whistle blower Protection Program

☑ Relevant state law *(specify, if known)*:

Wisconsin Fair Employment Law, Fair Work Act 2009

☐ Relevant city or county law *(specify, if known)*:                    Section 357

## III. Statement of Claim

Write a short and plain statement of the claim. Do not make legal arguments. State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought. State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

A.    The discriminatory conduct of which I complain in this action includes *(check all that apply)*:

- ☐ Failure to hire me.
- ☐ Termination of my employment.
- ☐ Failure to promote me.
- ☐ Failure to accommodate my disability.
- ☑ Unequal terms and conditions of my employment.
- ☑ Retaliation.
- ☑ Other acts *(specify)*: Breach of Duty (Human Resources)

*(Note: Only those grounds raised in the charge filed with the Equal Employment Opportunity Commission can be considered by the federal district court under the federal employment discrimination statutes.)*

B.    It is my best recollection that the alleged discriminatory acts occurred on date(s)

12/22/24, 01/10/24, 01/21/24, 02/01/24, 02/02/24, 02/05/24
03/01/24, 03/07/24, (05/05/24 – 05/17/24), (05/17/24 – 06/03/24)
(06/11/24 – 07/03/24)
& 07/29/24

C.    I believe that defendant(s) *(check one)*:

- ☐ is/are still committing these acts against me.
- ☑ is/are not still committing these acts against me.

D.    Defendant(s) discriminated against me based on my *(check all that apply and explain)*:

- ☑ race    Black/African American
- ☐ color
- ☐ gender/sex
- ☐ religion
- ☐ national origin
- ☐ age *(year of birth)* _____ *(only when asserting a claim of age discrimination.)*
- ☐ disability or perceived disability *(specify disability)*

E.    The facts of my case are as follows. Attach additional pages if needed.

_See attached document (III. E.)_

*(Note: As additional support for the facts of your claim, you may attach to this complaint a copy of your charge filed with the Equal Employment Opportunity Commission, or the charge filed with the relevant state or city human rights division.)*

## IV. Exhaustion of Federal Administrative Remedies

A.  It is my best recollection that I filed a charge with the Equal Employment Opportunity Commission or my Equal Employment Opportunity counselor regarding the defendant's alleged discriminatory conduct on *(date)*

07 07/12/24

B.  The Equal Employment Opportunity Commission *(check one)*:

☐ has not issued a Notice of Right to Sue letter.

☑ issued a Notice of Right to Sue letter, which I received on *(date)* 03/04/26 .

*(Note: Attach a copy of the Notice of Right to Sue letter from the Equal Employment Opportunity Commission to this complaint.)*

C.  Only litigants alleging age discrimination must answer this question.

Since filing my charge of age discrimination with the Equal Employment Opportunity Commission regarding the defendant's alleged discriminatory conduct *(check one)*:

☐ 60 days or more have elapsed.

☐ less than 60 days have elapsed.

## V. Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order. Do not make legal arguments. Include any basis for claiming that the wrongs alleged are continuing at the present time. Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts. Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

_see attached_  ( V . Relief )

## VI. Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A. For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:  05/30/26

Signature of Plaintiff _____

Printed Name of Plaintiff  _Anthony Jones_

### B. For Attorneys

Date of signing: _____

Signature of Attorney _____

Printed Name of Attorney _____

Bar Number _____

Name of Law Firm _____

Street Address _____

State and Zip Code _____

Telephone Number _____

E-mail Address _____

**III. Statement of Claims**   pg 5

**E.** The facts of my case are as follows

- Racial harassment: consistent use of language by previous DTL (Driver Team Leader) deemed derogatory and unwanted by plaintiff.

- Racial discrimination: disparities in load assignments, disparities in proposed driver accounts by driver transfer team, gross negligence of concerns and racial incidents by human resource department
  (Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17)
  (Wisconsin Fair Employment La (Wis. Stat Ch. 111.31)

- Employer Retaliation:
  • Pay Cuts: Unjustified salary decreases or reduction in consistent pay
  • Load Assignment/Schedule Sabotage: Assigning less desirable loads that conflicted with company policy.
  • Hostile Work Environment: Sudden increases in unwarranted disciplinary actions, verbally abusive treatment from management, retaliation tactics
  (OSHA Whistle Blower Proection Program)
  (Section 351 of the Fair Work Act of 2009)

- Breach of Duty and Gross Negligence: Schneider National Human Resource Department, noncompliant in their continuous choice to not investigate plaintiffs reports of racial harassment, racial discrimination, acts of retaliation, verbal threats from managers, and a racial incident involving a noose at a   Schneider National client location.
  • Gross negligence: human resources did not provide a safe and healthy work environment for plaintiff during tenure.

**Adverse Employment Actions experienced:**
(Section 351 of the Fair Work Act of 2009)

- Plaintiff forced to remain within hostile work environment of Intermodel Mobile Fleet Division department. Van Driver Account transfer attempt, after driver manager Joseph Cheslock verbal threat and racial harassment: Job offer pay decrease sent by transfer team representative, Debra Rudie, after the initial offer was accepted containing higher wage  1/10/24. Debra Rudie informed the plaintiff that there was a nationwide van account pay decrease that occurred on1/7/24. Plaintiff requested information containing the pay decrease. Debra would not provide it, nor would she provide me the name of her supervisor. The conversation resulted in Debra becoming agitated at plaintiffs request and unjustly labeling me combative and upset to other employees and to the Intermodel Mobile Fleet Division.

- Driver manager change request denied and overlooked, after continuous verbal racial harassment occurrences, and verbal threat by driver manager, Joseph Cheslock  11/16/23 -12/26/23

- Plaintiff forced to return to indiana customer a month after the plaintiff reported a racial incident involving a noose hanging on back of employees assigned trailer  4/24. Lori Taylor, Human Resource Director, expressed to plaintiff via email on 7/16/24 (four months after incident was reported) that her reason for not responding to their noose report was because she was "on vacation".

- Retaliatory tactics committed by Intermodel staff for engaging in protected activities, such as "whistleblowing" or reporting misconduct 1/15/24 – 7/27/24

- Unwarranted disciplinary action for "load rejection", which involved verbal threat from driver manager 12/22/23, in which was disregarded by management and directors as a verbal threat. Intermodel staff had plenty of time to assign the Wisconsin load to another driver for pick up, but refused to.

- Limited professional advancement, top five driver performance accolades disregarded. Fleet managers reluctant to station me in other cities for work. Chicago and Memphis were the only locations options provided . While other mobile fleet jet set drivers were stationing in other cities on occasion. Some other Jet Set drivers were averaging 3000 miles a week. In a conversation with Ray large, plaintiff asked him if the division needed more drivers that could average 3000 miles per week, his reply was yes. Plaintiff expressed to Ray large that the plaintiff would be willing to be planned, by the logistic planners and or dispatch managers, to average 3000 miles per week. Plaintiff was never presented the opportunity. Plaintiffs  monthly driving performance results, consistently earning the rank as a top 5 performing driver, constitutes that the plaintiff should have been presented the opportunity.

- After the verbal threat from Joseph Cheslock, he began to continuously remove pre-planned longer mile loads, to assign the plaintiff live loads with shorter miles, on at least four different occasions. When the plaintiff contacted Cheslock to ask him why he keeps continuously removing longer loads, his response was always "I have a load that needs to be done right away". Several times the plaintiff was also informed by Intermodel team leaders that the planners are the only personnel who assigned drivers loads. Which was false because at times, Joseph Cheslock, and Emily White would assign the plaintiff specific loads to be delivered themselves. The plaintiff is not sure which intermodal personnel was involved in the assigning of my load assignments, during the time my live load/unload percentage was higher than company policy, at 30%.

- Joseph Cheslock, along with other Intermodel personnel, cohesively committed racial discrimination and retaliation against myself, in which they were continuously attempting to assign me loads with lower miles, remove larger pre planned loads, and assign live loads, to affect my weekly pay. Intermodel evening staff would lie about available loads and say " this is all we have available", in regards to short mile loads. When I called the department again to speak to someone else, that individual would confirm that there were other loads available, and they would assign me a larger mile load. These occurrences was reported to human resources, and Intermodel team leaders. The occurrences were not investigated nor corrected.

- Live load percentage higher than any other Intermodel mobile fleet driver. 5/5/24 -5/17/24. On 5/17/24, Again a pre-planed larger mile load was removed from my tablet when the plaintiff arrived at the chicago rail yard to deliver a container, and the plaintiff was given a live load of smaller mileage. Plaintiff contacted the Intermodel division via phone and former dispatch manager Mike Doss answered. Plaintiff expressed to Mike that I had received  lot of live loads this week already, and confused as to why the plaintiff was receiving another one. He agreed that the plaintiffs live load percentage was too high for the week and he assigned me a different load. Mike Doss was very helpful at the time, and seemingly felt bad for me in a way, considering his tone and helpfulness. When the plaintiff asked Mike Doss who was the person that removed the previous larger mile load, and assigned me another live load, he would not inform the plaintiff. Intermodel Managers attempted to blame load assignments on an "automated computer system" used by Intermodel. Ray Large confirmed it was not because of computer system, but also would not inform me who was assigning the continuous live loads, that exceeded the maximum weekly policy percentage of 20%. For two weeks The plaintiffss live load percentage was 30%+. Live loads affect your weekly 70 hour D.O.T time and pay. Contacted my driver manager Emily White, and Intermodel team leaders to investigate the occurrence. Human resources and Intermodel team leaders never investigated or confirmed which staff member assigned the loads, every day, during those two weeks.  (Live load- when a driver sits at the customer and waits for them to load the trailer) Weekly pay effected, live loads time consuming,  averaged lower miles weekly in result.

- Intermodel Mobile Fleet Division would not answer the plaintiffs phone calls for a month and a half. Could not get through to anyone for any work related issues or questions, if my driver manager Emily White was not available.  5/17/24 – 7/5/24. These events occurred soon after Mike Doss assisted the plaintiff with high live load/unload discrimination information. Result, Weekly pay effected, poor DOT time management occurred in result when contacting Intermodel personnel to adjust load assignments and other work related issues. Tablet response wait times

were 45 minutes on occasion. Schneider personnel knows the phone number associated with the driver.

- "Crosstown loads" continuously assigned to the plaintiff after rail yard delivery for current load assignment. Occurred mostly in the evenings, by evening Intermodel personnel, 5/20/24 – 7/26/24. Crosstown loads – short loads that typically include no more than 25 to 50 miles. Per Schneider policy for regional and jet set drivers, hourly pay and "per load" pay is to be discussed prior to assigning or asking regional/jet set drivers if they would like to do crosstown load for the day. "Crosstown loads" are allocated for local drivers who are home daily, and are paid an hourly wage. Jet set drivers are paid a particular cents per mile. In speaking to driver manager, and team leaders about the consistent assignments of crosstown loads, plaintiff was informed that he should not be assigned crosstown loads, unless the plaintiff agree to do it for an entire day. Plaintiff never had a conversation with anyone about agreeing to do crosstown loads, but was continuously randomly assigned crosstown loads, even after my meetings with Rich Chandler and Jim Bryan. Weekly pay effected, continuous time consuming contacting Intermodel personnel to adjust load assignments. Rich Chandler and Jim Bryan both took time out of their day to meet with me about the ongoing reported concerns. After plaintiff contacted several Schneider global directors and executives via email, Rich Chandler contacted me and drove down from Wisconsin to meet in person to speak and address the ongoing concerns. The plaintiff doesn't feel it would be in a regional directors interest to drive 200 miles to meet with a driver employee over false claims of racial discrimination, harassment, and retaliation.

- NAT/ETA changes: N.A.T.- next available time for new load or pre-assignment, when the driver communicates to the planner, what time he'll be ready for his next load after current delivery) 6/20/24 – 7/26/24. At times when the plaintiff arrived at the delivery, his tablet would not receive a pre-assigned load. Reasons being, Intermodel personnel would change the plaintiffs NAT to a time that does not coincide with current delivery time. Example: CSI rail yard delivery from Cedar falls NAT was set to 08:00a by the plaintiff the night prior, to communicate to the planners that the plaintiff will be available for all new loads that are available at 08:00a. Providing an incorrect NAT will effect your next pre assignment. In some cases, someone in the intermodal division would adjust my NAT to an incorrect time that is outlandishly incorrect with my location, and delivery location. Which may be an hour away, but my NAT was adjusted to 17:00p in the evening. Incorrect NAT's affect your pay, time management and load assignments. These occurrences were not investigated, they were not corrected. The Intermodel mobile fleet division again blamed the continuous occurrences on the computer system. The computer system did not alter my NAT automatically to incorrect times during my first few months as an Intermodel

driver. In result, the plaintiffs weekly time management, pay and load assignments were effected and non-consistent with previous pay weeks.

- Employee never received thorough investigation from human resources on reports and claims. Andrea Vandervest(now Brodbeck) expressed during our conversation, on 6/4/24, that she's "been seeing a lot of these type of reports lately". The following week, the plaintiff was informed that she was no longer with the company. The remaining human resource personnel never fully investigated my reports of discrimination, retaliation and verbal threats made by managers. Plaintiff was never informed on who was committing the systematic discrimination and retaliation tactics within the Intermodel department.

- Plaintiff immediately released from employment by Supervisor James Bryan, after the plaintiff submitted their two week notice of resignation on 7/29/24. Department personnel also purposely purchased the plaintiff a flight home to the wrong destination city of Fort Lauderdale, Florida. Plaintiff provided Ray Large with the correct "home city" information, via email stating the home city of Tampa, Florida. An employees "home city" information is also visible and accessible to all department managers and office personnel on the Schneider employee portal websites. Plaintiff was not able to contact Intermodel department during business hours, for several hours after incorrect flight purchase.

**(V. Relief )**    pg 6

**WHEREFORE, Plaintiff respectfully requests that this Court enter judgment against Defendant as follows:**

**A. Compensatory Damages:**

1. ($45,000) Front Pay: time elapsed to acquire another job position with comparable salary (9 months)
2. ($15,000) Back Pay: for lost wages due to missed work involving in person conversations with managers and directors, and unequal pay and opportunities involving discrimination
3. ($100,000) for severe emotional distress, emotional trauma and mental anguish as a result of racial incidents and hostile work environment due to gross negligence.

**B. Punitive Damages:**

1. An award of ($200,000) as punishment for Defendant's regis and malicious conduct and intentional disregard for plaintiffs concerns and safety, involving racial, harassment, racial, discrimination, and whistleblower retaliation

**C. Costs and Fees:**

1. Out-of-pocket fees: Court filing fees, travel fees to appear in Court, etc..

2. Any possible future attorney representation fees and consultant fees

6/1/26